A06A1603. McMURRAY et al. v. HOUSWORTH et al.
(638 SE2d 421)

PHIPPS, Judge.

Michael and Deborah Housworth sold a twenty-four-acre tract of land which the purchasers — Lance and Melanie McMurray, and James and Alberta McMurray — subdivided into two tracts. A lake

created by a dam is situated on the property. The McMurrays brought this suit against the Housworths for breach of their general warranty of title upon discovering after purchasing the property that the owner and operator of the dam holds a floodwater detention easement that burdens the tract. The superior court awarded summary judgment to the Housworths on the ground that this easement is not such an encumbrance on the property as breaches the title warranty. We disagree and reverse.

Lance and Melanie McMurray purchased one of the twelve-acre parcels from the Housworths for $120,000 in 2004. On the same date, James and Alberta McMurray purchased the other parcel for the same price. The parcels were conveyed by warranty deeds that contained general warranties of title without any limitations applicable here. The McMurrays informed the Housworths that they were buying the property to build single-family residences on each parcel.

Apparently, however, the McMurrays failed to discover that recorded within the chain of title to their property in 1962 was a "floodwater retarding structure" easement which had been granted to the Oconee River Soil Conservation District. This easement is for construction, operation, and maintenance of a floodwater retarding structure or dam; for the flowage of waters in, over, upon, or through the dam; and for the permanent storage and temporary detention of any waters that are impounded, stored, or detained by the dam. It also reserved in the grantor and his successors the right to use the easement area for any purpose not inconsistent with full use and enjoyment of the grantee's rights and privileges, i.e., it is nonexclusive. After learning of the easement following their purchase of the property, the McMurrays demanded that the Housworths compensate them for the damages they would suffer as a result of the restrictions thereby placed on their usage.

Because the Housworths failed to comply with these demands, the McMurrays brought this suit against them seeking damages for breach of their warranties of title. The McMurrays moved for partial summary judgment on the question of whether the floodwater detention easement constitutes an encumbrance on the property breaching the warranties of title. The Housworths filed a cross-motion for summary judgment on the ground that, as a matter of law, the easement does not breach the warranties of title.

In agreement with the Housworths, the superior court awarded summary judgment to them and denied the McMurrays' motion for partial summary judgment. The court concluded that floodwater detention easements, like easements for public roadways and zoning regulations, do not breach a general warranty of title. Moreover, the court found that the McMurrays had notice of the easement because it was recorded within their chain of title and because the dam is

visible on their property. The court concluded that the McMurrays were therefore under a duty to inquire about any use restrictions resulting from the easement. Additionally, the court held that the Housworths have not breached their general warranty of title because the McMurrays have not been evicted from their property, as the easement is nonexclusive and houses may be built in easement areas if certain requirements are met.

1. The McMurrays contend that the superior court erred in analogizing the floodwater detention easement to a public roadway easement or zoning regulation and in thereby concluding that a floodwater detention easement is not the type of easement that breaches a general warranty of title.

(a) Each of the deeds in this case contained a general warranty of title in which the grantors agreed to "defend the right and title to the above described property, unto [the grantees], their heirs, assigns, and successors in title, against the claims of all persons." Under OCGA § 44-5-62, "[a] general warranty of title against the claims of all persons includes covenants of a right to sell, of quiet enjoyment, and of freedom from encumbrances." "An incumbrance has been defined as 'Any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee,' and this definition . . . encompasses an easement or right of way."[1] OCGA § 44-5-63 provides that "[i]n a deed, a general warranty of title against the claims of all persons covers defects in the title even if they are known to the purchaser at the time he takes the deed."[2]

(b) The rule in Georgia, as established in the early case of *Desvergers v. Willis*,[3] is that the existence of a public road on land, of which the purchaser knew or should have known at the time of the purchase, is not such an encumbrance as would constitute a breach of a general warranty of title.[4] The *Desvergers* rule is thus an exception to the general rule stated in OCGA § 44-5-63 that a general warranty of title by deed covers even defects known to the purchaser at the time he takes the deed.[5]

Although the *Desvergers* rule is not uniform throughout the country, it is the majority rule.[6] In adopting the rule, the court in

---

[1] *Walter L. Tally, Inc. v. Council*, 109 Ga. App. 100, 102 (135 SE2d 515) (1964) (citations omitted).

[2] See *Myers v. Funderburk*, 254 Ga. App. 779, 780 (1) (564 SE2d 27) (2002).

[3] 56 Ga. 515 (1876).

[4] *Hood v. Spruill*, 242 Ga. App. 44, 45 (1) (b) (528 SE2d 565) (2000) and cits.

[5] *Adams v. Belote*, 263 Ga. App. 640, 642 (1) (588 SE2d 827) (2003).

[6] See *Goodman v. Heilig*, 72 SE 866 (N.C. 1911). There has been a dearth of litigation in this area since the early twentieth century.

*Desvergers* concluded that a contrary holding would produce a "crop of litigation" that would be "almost interminable."[7] The reason, as later explained by the Supreme Court of Iowa in *Harrison v. The Des Moines & Ft. Dodge R. Co.*,[8] was that the immense number of warranty deeds then in existence rarely contained exceptions as to public roadways because of the universal belief that roadway access was a benefit rather than a burden to land. Therefore, a determination that public roadway easements were warranty-breaching encumbrances would have created innumerable liabilities where none had been thought to exist.

Courts in other states have also based their adoption of the *Desvergers* rule on the broader ground that where easements are open, notorious, and presumably known to the purchaser at the time of the purchase, that knowledge will exclude the easement from operation of a title warranty.[9] These courts have reasoned that where the encumbrance involves an open and obvious physical condition of the property, the purchaser is presumed to have seen it and fixed his price with reference to it. In view, however, of the Georgia rule that knowledge of a title defect will not exclude it from operation of a general warranty of title, creation of an exception for easements for public roadways or other purposes must be based on other grounds.[10] And courts in other states have ultimately concluded that public roadway easements should not be regarded as encumbrances on the additional ground that "public highways are not depreciative, but, on the contrary, they are highly appreciative, of the value of the lands on which they constitute an easement, and are a means without which such lands are not available for use, nor sought after in the markets."[11]

For a number of reasons, we do not find the floodwater detention easement in this case analogous to a public roadway easement. (1) We do not anticipate that we would open the litigation floodgates, so to speak, by holding that a floodwater detention easement breaches a general title warranty. (2) Moreover, a floodwater detention easement does not benefit the land to which it is subject. Although the property is benefitted by the lake or other body of water that creates the need for the easement (to the extent that the one enhances the value or enjoyment of the other), the easement burdens the property by permitting the impoundment of water on it to prevent flooding or

---

[7] 56 Ga. at 516.

[8] 58 NW 1081 (Iowa 1894).

[9] *Schwartz v. Black*, 174 SW 1146 (Tenn. 1914); *Ireton v. Thomas*, 113 P. 306 (Kan. 1911); *Vanness v. The Royal Phosphate Co.*, 53 So. 381 (Fla. 1910).

[10] See *Harrison*, supra.

[11] Id. at 1082; see *Sandum v. Johnson*, 142 NW 878 (Minn. 1913).

increased water runoff on other property located downstream. (3) The McMurrays brought this action for damages because of the easement, not the lake. And even though the lake is certainly open and obvious, the same cannot necessarily be said of the easement.[12] Although the superior court found that the dam is visible on the McMurrays' property, the McMurrays correctly point out that there is no evidence of record to support this finding.[13] As argued by the McMurrays, not every lake is created by a dam or burdened by a floodwater detention easement. (4) And although the McMurrays' constructive notice of the easement by reason of its recordation within their chains of title would provide a compelling reason for exempting the easement from operation of the warranty deed, OCGA § 44-5-63 provides otherwise. (5) The recording of the easement certainly renders it binding on the McMurrays insofar as concerns the rights of the easement holder;[14] but the question here is whether the existence of the easement gives rise to a claim against the grantor for breach of the warranty against encumbrances. For these reasons, the superior court erred in concluding that the floodwater detention easement should be excepted from the rule of OCGA § 44-5-63 in view of the exception for public roadways.

(c) The McMurrays also contend that the superior court erred in equating floodwater detention easements with zoning regulations, which have been held not to breach a general warranty of title.[15] Because the floodwater detention easement does not function in the same manner as a zoning regulation in all respects, we agree with this contention.

The floodwater detention easement does more than impose zoning-type restrictions on development activities on the property. It also grants the county soil and water conservation district rights for the storage and detention of impounded waters on the property. And it grants the district a right of ingress and egress upon the property. Easement rights such as these constitute an interest in property that must be acquired either by agreement of the property owner or by condemnation.[16] And although the easement does impose limitations on the McMurrays' use of their property that duplicate restrictions

---

[12] Compare *Smith v. Tolbert*, 211 Ga. App. 175 (438 SE2d 655) (1993).

[13] Compare *State Soil & Water Conservation Comm. v. Stricklett*, 252 Ga. App. 430, 433-436 (2) (555 SE2d 800) (2001).

[14] See id.

[15] *Barnett v. Decatur*, 261 Ga. 205 (2) (403 SE2d 46) (1991).

[16] See *Stephens County Soil & Water Conservation Dist. v. Wright Bros. Constr. Co.*, 215 Ga. App. 352 (451 SE2d 802) (1994); *Walker v. City of Warner Robins*, 262 Ga. 551 (1) (422 SE2d 555) (1992).

imposed under zoning-type regulations applicable to the property, the two do not appear to be coextensive.

In this regard, although the easement does not by its terms impose any restrictions on building or construction activities, and although it is not exclusive, it does operate to prohibit erection of a residence or other improvements in the area of the easement to the extent that they would substantially interfere with the rights of the easement holder.[17] In addition, the National Resource Conservation Service has promulgated guidelines for proposed development of property subject to floodwater easements held by local soil and water conservation districts.

The limitations thereby imposed on the McMurrays' property do appear to overlap certain regulatory provisions which are applicable to it and which are arguably in the nature of zoning regulations. These provisions are found in the Uniform Development Code (UDC) for Jackson County, which designates certain areas of the county as water supply watershed districts. One is the Sandy Creek Reservoir district, in which the McMurrays' property lies. Within such districts, no land-disturbing activity, construction or other development other than certain exempted activities inapplicable here may be conducted without a county permit. To the extent that the restrictions imposed by the floodwater detention easement merely duplicate limitations that would otherwise apply under zoning-type regulations, the easement does not constitute an encumbrance on the property in any real sense or damage the owner of the property subject to the easement. But to the extent that the easement imposes additional restrictions, it does encumber the property and thereby damage the owners. Because the extent of the overlap between the easement restrictions and the zoning-type regulations cannot be determined from the record, the superior court erred in equating the two.

2. The McMurrays contend that the trial court erred in concluding that the Housworths have not breached their general warranty of title because the McMurrays have not been evicted from their property. We agree.

A general warranty of title against the claims of all persons includes three separate covenants: (1) a covenant of a right to sell, (2) a covenant of quiet enjoyment, and (3) a covenant of freedom from encumbrances.[18] To constitute breach of the covenant of quiet enjoyment, an eviction or equivalent disturbance by title paramount must

---

[17] See *Stricklett,* supra, 252 Ga. App. at 430-433 (1); see also *Folk v. Meyerhardt Lodge,* 218 Ga. 248 (127 SE2d 298) (1962).

[18] OCGA § 44-5-62.

occur.[19] The McMurrays, however, are complaining of breach of the covenant of freedom from encumbrances. In *State Mut. Ins. Co. v. McJenkin Ins. & Realty Co.*,[20] we recognized that "a general warranty of title includes the warranty of freedom from incumbrances, and it is not necessary to show actual eviction." Moreover, *McJenkin* found that because an easement is an assertion of a paramount qualified interest in the land, its effect may cause an eviction of the owner of the property burdened by the easement insofar as his exclusive use of the easement area was concerned.[21]

> Where an encumbrance is a servitude or easement which can not be removed at the option of either the grantor or grantee, damages will be awarded for the injury proximately caused by the existence and continuance of the encumbrance, the measure of which is deemed to be the difference between the value of the land as it would be without the easement and its value as it is with the easement.[22]

Because the evidence shows without dispute that the Housworths breached their general warranties of title, the superior court erred in awarding summary judgment to the Housworths and in failing to grant the McMurrays' motion for partial summary judgment. Questions of fact exist as to damages.

*Judgment reversed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 6, 2006.

*Fortson, Bentley & Griffin, Jeffrey W. DeLoach*, for appellants.
*Russell, Stell, Smith & McLocklin, John E. Stell, Jr.*, for appellees.

---

[19] *Whited v. Issenberg*, 261 Ga. App. 787, 788 (584 SE2d 59) (2003).

[20] 86 Ga. App. 442, 443 (1) (71 SE2d 670) (1952), disapproved on other grounds, *Teems v. City of Forest Park*, 137 Ga. App. 733, 734 (1) (225 SE2d 87) (1976).

[21] 86 Ga. App. at 444.

[22] *Beaullieu v. Atlanta Title & Trust Co.*, 60 Ga. App. 400, 403 (4 SE2d 78) (1939) (citation and punctuation omitted).